1  KILPATRICK TOWNSEND & STOCKTON LLP
   Heather Habes (State Bar No. 281452)
2  9720 Wilshire Boulevard, PH
   Beverly Hills, CA  90212
3  Telephone:  (310) 777-3730
   Facsimile:  (310) 388-5364
4  Email: hhabes@kilpatricktownsend.com
   John P. Jett (Georgia Bar No. 827033) (*pro hac vice application to be filed*)
5  Jeffrey H. Fisher (Georgia Bar No. 981575) (*pro hac vice application to be filed*)
   1100 Peachtree Street, Suite 2800
6  Atlanta, GA  30309-4528
   Telephone:  (404) 815-6500
7  Facsimile:  (404) 815-6555
   Email: jjett@kilpatricktownsend.com
8        jfisher@kilpatricktownsend.com

9  Counsel for Plaintiffs
   SHELFGENIE FRANCHISE SYSTEMS, LLC, G-O MANUFACTURING, LLC
10 and CABINET ESSENTIALS GROUP, LLC

11

12              **UNITED STATES DISTRICT COURT**

13          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14                   **SOUTHERN DIVISION**

15 SHELFGENIE FRANCHISE              Case No.
   SYSTEMS, LLC, G-O
16 MANUFACTURING, LLC AND
   CABINET ESSENTIALS GROUP,        **COMPLAINT FOR**
17 LLC                              **MISAPPROPRIATION OF TRADE**
                                    **SECRETS, TRADEMARK**
18           Plaintiffs,            **INFRINGEMENT AND BREACH**
           v.                       **OF CONTRACT**
19
   STATES INDUSTRIES, LLC and
20 STATES DRAWER BOX                **DEMAND FOR JURY TRIAL**
   SPECIALTIES, LLC
21
             Defendants.
22

23      Plaintiffs ShelfGenie Franchise Systems, LLC ("SFS"), G-O Manufacturing,

24 LLC ("G-O") and Cabinet Essentials Group, LLC ("CEG") (collectively,

25 "ShelfGenie") allege their Complaint for Misappropriation of Trade Secrets,

26 Trademark Infringement, and Breach of Contract against Defendants States

27

28
   ──────────────────────────────────────────
                         1
   **COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT**
                   **AND BREACH OF CONTRACT**

   DERROR! BOOKMARK NOT DEFINED.

Industries, LLC ("States Industries") and States Drawer Box Specialties, LLC ("SDBS") (collectively, "Defendants") as follows:

## JURISDICTION AND VENUE

1.     Subject-matter jurisdiction exists because this action arises under Trademark Act of 1946 (the "Lanham Act"), per 15 U.S.C. § 1121(a).  This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 and § 1338. This Court has supplemental jurisdiction over the related state and common-law claims pursuant to 28 U.S.C. § 1338 and § 1367.

2.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims have occurred and are occurring in Orange, California, which is within this judicial district's Southern Division.   In addition, the agreements between the parties contain a forum selection clause requiring that the exclusive jurisdiction and venue for any dispute related to the agreements shall be in a court located within the State of California.

## NATURE OF THE ACTION

3.     Plaintiffs SFS and G-O are wholly-owned subsidiaries of Plaintiff CEG (collective, "ShelfGenie").  ShelfGenie is a provider of custom designed, built and installed glide-out shelving solutions (the "ShelfGenie Glide-Out").  A glide-out is a shelf that can be moved forward on slides in order to more easily reach the contents stored in the back of a cupboard or cabinet.  ShelfGenie distributes the ShelfGenie Glide-Out through franchisees and affiliate-owned businesses. ShelfGenie's franchisees and affiliated-owned businesses have designers that work with customers to identify what precise size and type of ShelfGenie Glide-Outs will meet a customer's individual needs.

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

4.  Defendant States Industries is the managing member of Defendant SDBS.  Defendants are primarily manufacturers of drawer boxes for cabinet and furniture makers.  Defendants are also providers of glide-out shelving units.

5.  On December 4, 2012, Defendants acquired Drawer Box Specialties, Inc. ("DBS") and Drawer Box Holdings, Inc. ("DBH").  Prior to that time, ShelfGenie received services from DBS and DBH.  Following the acquisition, Defendants have continued to provide the services previously provided by DBS and DBH to ShelfGenie from the same factory, located at 1482 N. Batavia Street, Orange, California.  DBS and DBH were merged into Defendants and no longer exist.

6.  Defendants began manufacturing ShelfGenie Glide-Outs for ShelfGenie in April 2010.

7.  ShelfGenie maintains a competitive advantage through the quality and craftsmanship of ShelfGenie Glide-Outs.   To ensure that Defendants could manufacture the ShelfGenie Glide-Outs to ShelfGenie's exacting specifications, ShelfGenie disclosed its confidential information and trade secrets to Defendants, including its manufacturing, design, construction and assembly specifications, process, drawings and techniques, ordering process, methodology and terminology, pricing and volume information, and marketing plans, strategies and data.

8.  ShelfGenie and Defendants entered into agreements containing non-solicitation and confidentiality provisions that prevented Defendants from competing against ShelfGenie or using ShelfGenie's trade secrets and confidential information.   The agreements also required Defendants to maintain the secrecy of ShelfGenie's trade secrets and confidential information.

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

9. Defendants recently began manufacturing and selling a new product, the "New Smart Shelf," that looks nearly identical to the ShelfGenie Glide-Out, and that directly competes with the ShelfGenie Glide-Out.

10. Defendants misappropriated ShelfGenie's trade secrets and breached the parties' non-solicitation and confidentiality agreements by using ShelfGenie's trade secrets and confidential information learned through the parties' manufacturing relationship to create, manufacture, and sell products that directly compete with the ShelfGenie Glide-Outs, including the New Smart Shelf.

11. Defendants are infringing ShelfGenie's valuable trade dress by offering for sale and selling in U.S. commerce the New Smart Shelf, which incorporates a nearly-identical version of the distinctive ShelfGenie Glide-Out design. The design of the New Smart Shelf is likely to deceive, confuse, and mislead purchasers, prospective purchasers, and others into believing that the New Smart Shelf is authorized by, or in some manner associated with ShelfGenie, which it is not.

12. ShelfGenie seeks monetary damages and equitable and declaratory relief for Defendants' misappropriation of trade secrets, trademark infringement, and breach of contract.

## FACTS

### ShelfGenie's Confidential Information and Trade Secrets

13. In connection with the products that ShelfGenie provides to its clients, ShelfGenie develops and maintains sensitive, proprietary, and confidential information about its products, business practices, methodologies, and customers.

14. Certain of ShelfGenie's confidential and proprietary information constitute valuable trade secrets.

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

15.     ShelfGenie's trade secrets include, without limitation, its manufacturing, design, construction and assembly specifications, drawings, process and techniques, ordering process, methodology and terminology, pricing and volume information, and marketing plans, strategies and data, or the combination thereof.

16.     ShelfGenie's confidential, proprietary, and trade secret information gives ShelfGenie a competitive advantage over its competitors who have not made substantial economic and other investments in developing similar information.

17.     ShelfGenie's confidential, proprietary, and trade secret information is not generally or publicly known in its business of developing and manufacturing custom glide-out shelving solutions, nor is this information readily ascertainable through reverse engineering or independent development.

18.     ShelfGenie's confidential, proprietary, and trade secret information is subject to confidentiality obligations embodied in, among other things, agreements that include strict confidentiality provisions that restrict the use of ShelfGenie's confidential information.

19.     ShelfGenie makes efforts that are reasonable under the circumstances to maintain the secrecy of its confidential and proprietary information, including, but not limited to, requiring manufacturers, vendors, business partners, and employees to sign confidentiality agreements, maintaining a code of conduct that emphasizes the importance of maintaining the secrecy of ShelfGenie's confidential and proprietary information, marking protected information as "confidential" and "proprietary," and carefully limiting disclosure of sensitive information.

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

1
2
3
4
5
6
7
8
9
10

**The Distinctive ShelfGenie Trade Dress**

11     20.     The ShelfGenie Glide-Out has a distinctive appearance and design.

Specifically, the ShelfGenie Glide-Out trade dress consists of: (1) high-grade Baltic

Birch; (2) a wood grain that runs front to back; (3) dovetail corner joints; (4)

"ShelfGenie bullnose" rounded edges with a specific curvature finished with clear

foil; and (5) raw edges left unfinished on the front and back panel (the "ShelfGenie

Trade Dress").



The ShelfGenie Glide-Out

Dovetail corner joints

Bullnose (rounded) edges, clear foil finish

Baltic Birch with wood grain running front to back

Raw, unfinished edges

SAP... SECRETS, TRA... NT
AND BREACH OF CONTRACT

7827706V.7

1

2

3       21.     Since its introduction to the market in 2008, ShelfGenie has sold over

4    300,000 ShelfGenie Glide-Outs bearing the ShelfGenie Trade Dress, and achieved

5    over $100 million in sales throughout the United States.

6       22.     The ShelfGenie Trade Dress serves to identify the ShelfGenie Glide-

7    Out among relevant consumers of shelving and organizational solutions.  Relevant

8    consumers include, for example, homeowners, professional organizers, and interior

9    designers seeking the professional installation of high-end shelving solutions, as

10   well as any potential consumers who may encounter the ShelfGenie Trade Dress in

11   the post-sale setting.

12      23.     The distinctive appearance of ShelfGenie Glide-Outs is essential to

13   ShelfGenie's brand.  ShelfGenie promotes the ShelfGenie Glide-Out as being

14   "made from beautiful natural wood," and ShelfGenie's high-end appearance

15   distinguishes ShelfGenie from its competitors, whose products appear visually

16   dissimilar and are sold at a lower price point.

17      24.     Over the past seven (7) years, ShelfGenie has spent over $19 million

18   dollars promoting the ShelfGenie Glide-Outs bearing the ShelfGenie Trade Dress.

19   Pictures, videos, and physical samples of the ShelfGenie Glide-Out bearing the

20   ShelfGenie Trade Dress feature prominently in ShelfGenie's advertising and

21   marketing materials throughout the United States.

22      25.     As a result of ShelfGenie's extensive use and promotion of its

23   ShelfGenie Trade Dress in U.S. commerce, the ShelfGenie Trade Dress has

24   acquired distinctiveness and secondary meaning in the minds of relevant consumers

25   as a well-known symbol of ShelfGenie's goods. ShelfGenie has built up and now

26   owns valuable goodwill that is symbolized by the ShelfGenie Trade Dress, and the

27

28

7

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

1    purchasing public has come to associate the ShelfGenie Trade Dress with

2    ShelfGenie.

3         26.    The combination of elements comprising the ShelfGenie Trade Dress

4    is nonfunctional, in that it is not essential to the use or purpose of the ShelfGenie

5    Glide-Out, it does not reduce the cost or improve the performance of the

6    ShelfGenie Glide-Out, and its use by ShelfGenie does not put competitors at any

7    significant non-reputation-related disadvantage.  Indeed, competitors such as

8    Defendants have available a multitude of different woods, finishing, and edges they

9    could use; the only reason to mimic the ShelfGenie Trade Dress is to attempt to

10   trade off ShelfGenie's goodwill and siphon away sales from ShelfGenie.

11             **The Parties' Original Confidentiality Agreement**

12        27.    On March 29, 2010, Plaintiff CEG and DBS entered into the

13   Confidentiality Agreement (the "Confidentiality Agreement") for "the purpose of

14   maintaining and holding in the strictest confidence the proprietary and technical

15   information, trade secrets and inventions of [ShelfGenie]."  Confidentiality

16   Agreement at 1, attached hereto as **Exhibit A**.

17        28.    Pursuant to the Confidentiality Agreement, ShelfGenie is authorized to

18   disclose to Defendants "certain information relating to products, proposed products,

19   manufacturing, operations, marketing plans, business plans, systems information,

20   financial information and other information about [ShelfGenie]."  *Id.*

21        29.    The Confidentiality Agreement defines "Confidential Information" as

22   "all oral and written information, including business, strategic, operating,

23   marketing, financial, employee, customer and/ or supplier, systems, and pricing/

24   cost information and any other proprietary, technical and trade secret information

25   disclosed under this Agreement."  *Id.*

26

27

28

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT
AND BREACH OF CONTRACT**

7827706V.7

30.     The Confidentiality Agreement provides that Defendants "shall maintain in confidence indefinitely all Confidential Information, shall not divulge Confidential Information in whole or in part, to any third party, and shall not make use of the Confidential Information other than in relation to evaluating, distributing, purchasing and selling products manufactured or distributed by [ShelfGenie] (the 'Transaction') without the written permission of [ShelfGenie]." *Id.*

31.     The Confidentiality Agreement further requires Defendants to restrict disclosure of ShelfGenie's confidential information to employees and other persons who have a need to know such confidential information and who have "executed agreements to maintain the confidentiality" of the confidential information. *Id.* § 2.

32.     In the event of any violation of the Confidentiality Agreement, ShelfGenie is entitled to obtain "preliminary and permanent injunctive relief, as well as an equitable accounting of all profits or benefits arising out of such violation . . . in addition to any other rights or remedies to which [ShelfGenie] may be entitled" *Id.* § 6.

**The Parties' Purchase Agreement**

33.     On March 1, 2011 Plaintiff SFS entered into an agreement with DBH and DBS that formalized the business relationship between ShelfGenie and Defendants (the "Purchase Agreement").  The Purchase Agreement is attached as **Exhibit B**.

34.     The Purchase Agreement provides for Defendants' manufacture of ShelfGenie Glide-Outs, defined as "Product units with Railing Services." *Id.* § 4.

35.     The Purchase Agreement defines "Products" as "goods and/or services that include or use Railing Services at the time of manufacturing by [Defendants] and are considered to be Pull Outs used in residential applications.  [Defendants']

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

1    Accessory line and Smart Shelf are specifically excluded from the Products." *Id.* §
2    1.4.

3          36.    "Railing Services" are "the assembly of a customer specified
4    mechanical rails or glides to pull-outs." "Pull Outs" means "shelves made to pull
5    out or roll out of kitchen or pantry cabinets." *Id.* §§ 1.4, 1.6.

6          37.    The Purchase Agreement defines ShelfGenie's confidential
7    information as "all information related to [ShelfGenie] and its affiliates, the
8    Products designed, manufactured, assembled or otherwise created or developed by
9    or for [ShelfGenie], the Manufacturing Process Information, other trade secrets and
10   proprietary information related to [ShelfGenie] and its affiliates, ordering
11   methodology and terminology for the Products designed, manufactured, assembled
12   or otherwise created or developed by or for ShelfGenie, pricing information related
13   to the Products designed, manufactured, assembled or otherwise created or
14   developed by [ShelfGenie] specifically for its proprietary products, information
15   related to [ShelfGenie's] and its affiliates' account with [Defendants] (including
16   volume) and this Agreement." *Id.* § 1.2

17         38.    "Manufacturing Process Information" is defined as ShelfGenie's and
18   its "affiliates' specifications, drawings, ordering process, methodology and
19   terminology (including product codes, and the customized excel spreadsheet),
20   bracketing and riveting process, labeling process (including cabinet number and
21   location description), and design, manufacturing, construction and assembly
22   process and techniques that are proprietary and unique for the Products and Railing
23   Services." *Id.* § 1.9.

24         39.    The Purchase Agreement incorporates the Confidentiality Agreement
25   and provides that the terms of the Confidentiality Agreement apply to Plaintiff
26   SFS' confidential information, and that Plaintiff SFS' confidential information

27

28

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT
AND BREACH OF CONTRACT**

7827706V.7

shall be considered "Confidential Information" as defined in the Confidentiality Agreement. The Purchase Agreement makes clear that DBH and DBS are bound by the terms of the Confidentiality Agreement, including obligations related to ShelfGenie's Confidential Information. The Purchase Agreement provides Plaintiff SFS an explicit, independent right to enforce the terms of the Confidentiality Agreement as it relates to ShelfGenie's confidential information. *Id.* § 3.

40. The Purchase Agreement also includes a non-solicitation provision (the "Non-Solicitation Provision") that prohibits Defendants from directly soliciting "[ShelfGenie's] Competitors, customers, or prospective customers to purchase the Products from [Defendants]." *Id.* § 2.1.

41. "Competitor" is defined as any (i) national or regional franchise or dealer system or network which requests the design, manufacture, assembly, or creation of the Products that will be used/shipped in or to the Territory by such customer or end users of the Products, or (ii) independent business (that advertises or markets the Products for installation in the homes of consumers) which requests the design, manufacture, assembly, or creation of the Products that will be used in the Territory by such customer or end users of the Products or shipped to sites in the Territory." *Id.* § 1.1

42. The Non-Solicitation Provision also provides that, if a customer or prospective customer requests that Defendants manufacture customized mechanical rails or glides for shelves made to pull out of kitchen or cabinet pantries, the customer "must independently establish the design of the Products and manufacturing process for the Products," and Defendants "must not use [ShelfGenie's] confidential Information (including the Manufacturing Process Information)" in refining such customer's design or process. *Id.* § 2.2.

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

43.     If Defendants desire to manufacture "Products" for or on behalf of a competitor that has independently developed a design and manufacturing process, Defendants must provide written notice to ShelfGenie of Defendants' plan to provide the Products to a competitor. *Id.* § 2.3.  Defendants have never provided such notice to ShelfGenie.

**The Amendment to the Agreements**

44.     In December 2012, DBS was acquired by Defendant SDBS and its managing member, Defendant States Industries.

45.     On March 11, 2015, in order to ensure that ShelfGenie's confidential information remained protected, Defendants and ShelfGenie entered into an Amendment to the Agreements that added Defendants as a party to the Confidentiality Agreement and the Purchase Agreement (the "Amendment"). Amendment at 1, attached hereto as ***Exhibit C***.

46.     The Amendment acknowledges that Defendants "had received certain confidential information from [ShelfGenie]," and confirms "that said confidential information is within the definition of Confidential Information in the [Confidentiality Agreement]." *Id.* at 1.

47.     The Amendment makes clear that ShelfGenie "ha[s] not received any of [Defendants'], DBS's, or DBH's confidential information (including anything within the definition of "confidential information" under the [Confidentiality] Agreement or the Purchase Agreement) up and through the date of this Agreement."  Defendants are required to provide written notice if they share any confidential information with ShelfGenie in the future. *Id.* § 6.  Defendants have never provided such notice.

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

1
2
3

48.     The Amendment expressly acknowledges and confirms that Defendants "are bound to protect [ShelfGenie's] and its respective affiliates' confidential information."  *Id.*

4
5
6
7
8
9
10

49.     The Amendment requires Defendants to promptly disclose "any improvement, modification, alteration, amendment, update, or other changes to or derivative works or other intellectual property arising out of or made through reference to the Confidential Information" to ShelfGenie.  Any such "Works and the goodwill associated therewith will be and become the sole and absolute property of [ShelfGenie]." *Id.* § 5.  Defendants have not disclosed any derivative works to ShelfGenie.

11
12
13
14
15
16
17
18

50.     The Amendment also provides that the Amendment, the Confidentiality Agreement, and the Purchase Agreement (collectively, the "Agreements") are governed by Georgia law.  The Amendment further provides that, to the extent a "dispute arises under or related to [the Agreements], whereby [ShelfGenie] seek[s] relief or remedy against [Defendants], the exclusive jurisdiction and venue for such dispute shall be a court of competent jurisdiction located within the State of California, and the parties do hereby consent to such exclusive jurisdiction and venue." *Id.* § 7.

19
20
21

## **Defendants Receive ShelfGenie's Trade Secrets and Confidential Information.**

22
23
24
25
26

51.     ShelfGenie supplied Defendants with its confidential information and trade secrets, including its manufacturing, design, construction and assembly specifications, drawings, process and techniques, ordering process, methodology and terminology, pricing and volume information, and marketing plans, strategies and data.

27
28

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

52.     ShelfGenie's competitive advantage is derived, in part, from its ability to efficiently and effectively manufacture high-quality customized glide-out shelving solutions that are both durable and designed attractively.

53.     By contrast, Defendants' core business is the manufacture of drawer boxes, not the design or manufacture of glide-outs.  Defendants typically sell drawer boxes to a cabinet or furniture maker that in turn adds the mechanical rail or glide to the drawer box.  Prior to engaging with ShelfGenie, Defendants had, at best, limited experience manufacturing glide-outs or attaching mechanical rails to boxes.

54.     Unlike a drawer box, the elements of the ShelfGenie Glide-Outs, including the box and the mechanical rail or glide, are exposed to customers' view in their daily use.  That customer exposure requires that Shelf-Genie Glide-Outs be manufactured to exacting quality and aesthetics specifications.

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

1
2
3
4
5
6
7
8



ShelfGenie Glide-Outs

9
10
11
12
13
14
15
16
17
18
19
20



Standard Kitchen Drawer Boxes

21
22

55.     As a result, ShelfGenie worked closely with Defendants on the

23  manufacturing process and provided Defendants with proprietary, detailed

24  information about every stage of ShelfGenie's manufacturing, design, and

25  assembly process, including information that constitutes know-how and negative

26  know-how in the sense that it reflects the fruits of a substantial investment of time

27
28

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT
AND BREACH OF CONTRACT**

7827706V.7

1    and money in determining the best practices that ShelfGenie uses and is constantly

2    improving upon.

3        56.    ShelfGenie provided Defendants with confidential and proprietary

4    written manufacturing, design, construction, and assembly specifications (the

5    "Manufacturing Specifications"), including but not limited to manuals entitled

6    "Glide-Out Specifications," "Rivet-Less Bracket Specifications," "ShelfGenie Full

7    Shelf and Strip Mount Specifications," and ShelfGenie "Glide-Out Mounting

8    Styles."  The Manufacturing Specifications included detailed drawings, blueprints,

9    illustrations, and instructions specifying how the ShelfGenie Glide-Outs must be

10   manufactured and assembled, including the materials Defendants must use and the

11   sequence and process of assembly.

12       57.    ShelfGenie does not disclose its Manufacturing Specifications except

13   as necessary and under the protection of a robust confidentiality agreement. Each

14   page of the Manufacturing Specifications includes written notice that the

15   Manufacturing Specifications are "Confidential" and constitute ShelfGenie's

16   "proprietary information."  ShelfGenie's Manufacturing Specifications derive value

17   from not being known to the public.

18       58.    In addition to providing written Manufacturing Specifications,

19   ShelfGenie's employees frequently visited Defendants' factory in Orange,

20   California.  During those visits, ShelfGenie conveyed detailed, proprietary

21   information about ShelfGenie's manufacturing, design, construction and assembly

22   process and techniques.  For example, ShelfGenie instructed Defendants how to

23   set-up their assembly line or "cell" and what tasks to assign each assembly station

24   in the cell.

25       59.    ShelfGenie also provided Defendants with proprietary know-how

26   concerning the effective packaging of the ShelfGenie Glide-Outs so that the high-

27

28

16

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

1  end wood boxes would not be damaged by the sharp edges of the mechanical rails

2  when shipping multiple glide-outs in one package.

3      60.    Through the parties' manufacturing relationship, Defendants were

4  given access to confidential marketing materials, including proprietary information

5  about ShelfGenie's sales data, ordering process methodology, and terminology.

6  ShelfGenie's ordering and marketing materials reveal proprietary information

7  about, *inter alia*, customer preferences and ShelfGenie's pricing.

8      61.    Defendants wrongfully used ShelfGenie's trade secrets and

9  confidential information to develop the "New Smart Shelf" product.

10          **The Original Smart Shelf/Simple Shelf Product**

11      62.    In early 2009, ShelfGenie was approached by Armand Gagnon of

12  Shelf Improvement Rollout Shelves about enabling the purchase and shipment of

13  Shelf Improvement's Do-It-Yourself ("DIY") Rollout Shelves by DIY consumers.

14      63.    Shelf Improvement's DIY Rollout Shelves were a low-end,

15  inexpensive product that were markedly different from and did not compete with

16  ShelfGenie's Glide-Outs.  Because the DIY Rollout Shelves featured, *inter alia*,

17  inexpensive wood and different edging and finishing than ShelfGenie Glide-Outs,

18  the DIY Rollout Shelves had a different aesthetic from the ShelfGenie Glide-Outs.

19      64.    Additionally, the DIY Rollout Shelves functioned differently from

20  ShelfGenie Glide-Outs in that the DIY Rollout Shelves had rails attached

21  underneath the box extending down 3/4 of the box, whereas ShelfGenie's Glide-

22  Outs used full-extension rails attached to the side of the box.  In addition, while

23  ShelfGenie's Glide-Outs were only sold through ShelfGenie franchisees and

24  affiliate-owned businesses, and professionally installed, the DIY Rollout Shelves

25  were marketed and sold directly to consumers for DIY installation.

26

27

28

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

65.     Recognizing the aesthetic, quality, and functional differences, the DIY Rollout Shelves sold for less than $100 while ShelfGenie Glide-Outs typically sell for more than $300.

66.     In August 2009, ShelfGenie and Shelf Improvement entered into a "Dealer Agreement" through which ShelfGenie acquired a non-exclusive right to purchase and sell "3/4 Extension Rollouts."  Dealer Agreement Schedule A, attached as **Exhibit D**.

67.     In addition, Shelf Improvement agreed to develop and deploy an informational website for ShelfGenie that would enable the purchase and shipment of Shelf Improvement's DIY Rollout Shelves by consumers.  *Id.* at 6-9.

68.     ShelfGenie distributed Shelf Improvement's DIY Rollout Shelves without any reference or link to ShelfGenie.  The DIY Rollout Shelves were sold under the trade name "Simple Shelf" and from the website www.simpleshelf.com.

69.     Mr. Gagnon told ShelfGenie that Shelf Improvement's DIY Rollout Shelves were manufactured by Defendants and introduced ShelfGenie to Defendants.  Through that introduction, ShelfGenie and Defendants ultimately entered into a manufacturing relationship for the ShelfGenie Glide-Outs.

70.     In addition to manufacturing Shelf Improvement's DIY Rollout Shelves, Defendants also acted as a dealer of Shelf Improvement's DIY Rollout Shelves.  Defendants sold the DIY Rollout Shelves under the trade name "Smart Shelf."

71.     The original Smart Shelf sold by Defendants was identical to the Simple Shelf.  Both products used 3/4 Extension Rollouts attached underneath the box and were made from the same materials.  The original Smart Shelf typically sold at a price point below $100.  *See* Smart Shelf Marketing Pamphlet, attached hereto as **Exhibit E**.

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

72.     Moreover, the look and feel of the original Smart Shelf was completely different from the ShelfGenie Glide-Out.  The original Smart Shelf used different wood, corner joints, and edging than the ShelfGenie Glide-Out.

73.     Because Defendants were already manufacturing the original Smart Shelf and the original Smart Shelf did not compete with the products that Defendants were manufacturing for ShelfGenie (the ShelfGenie Glide-Outs), ShelfGenie permitted Defendants to continue manufacturing the original Smart Shelf and included a carve-out in the Purchase Agreement that excepted "[Defendants'] Accessory line and Smart Shelf" from the Non-Solicitation Agreement.

### **The New Smart Shelf Product**

74.     In March 2015, Mr. Gagnon of Shelf Improvement informed ShelfGenie that Shelf Improvement would no longer accept orders for the Simple Shelf product with 3/4 Extension Rollouts as contemplated by the Dealer Agreement.

75.     Mr. Gagnon told ShelfGenie that Shelf Improvement was "going to redo the product and use Full Extension slides instead."  Mr. Gagnon informed ShelfGenie that the new Shelf Improvement rollouts would have rails on the side of the box, as opposed to under the box.

76.     Although ShelfGenie repeatedly tried to acquire a sample of the new product, Shelf Improvement did not deliver a sample until August 13, 2015.

77.     When ShelfGenie received the sample from Shelf Improvement, ShelfGenie expressed concern that the new Smart Shelf was almost indistinguishable from the ShelfGenie Glide-Outs.  Although the sample retained the same box and used the same wood, finishes, and edging as the Simple Shelf, it used side-mounted, full-extension rails.  ShelfGenie informed Shelf Improvement

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

that Simple Shelf needed to remain in the DIY sector, remain at a low price point, and retain the 3/4 extension rollouts.

78.    Despite repeated attempts, ShelfGenie has been unable to contact Mr. Gagnon or Shelf Improvement since the summer of 2015.  As a result, ShelfGenie no longer acts as a dealer of the Simple Shelf.

79.    In October 2014, ShelfGenie learned that Defendants had contacted Fulterer, the manufacturer of the rails on the ShelfGenie Glide-Outs.  Because Fulterer and ShelfGenie have an exclusivity agreement, Fulterer informed Defendants that they could not sell rails to Defendants.  ShelfGenie now understands that Defendants' request was part of an effort to create a knock-off of the ShelfGenie Glide-Outs.

80.    On June 24, 2015, around the same time that ShelfGenie learned that Shelf Improvement would no longer be producing the DIY shelves with 3/4 extension rollouts, Defendants issued a press-release announcing the launch of a new "Smart Shelf" product (the "New Smart Shelf").  *See* New Smart Shelf Press Release, attached as ***Exhibit F***.

81.    In or around August 2015, after ShelfGenie could not reach Mr. Gagnon, ShelfGenie requested and received a sample of the New Smart Shelf from Defendants.  Upon receiving the sample, ShelfGenie discovered that the New Smart Shelf was nearly identical to the ShelfGenie Glide-Out.

82.    In fall 2015, an employee of ShelfGenie visited Defendants' factory and asked to see a sample of the ShelfGenie Glide-Out.  Because of the substantial similarities in the overall look and feel between the New Smart Shelf design and the ShelfGenie Trade Dress, Defendants' employee confused the parties' products and mistakenly provided the ShelfGenie employee a sample of the New Smart Shelf.

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

83.     In addition, the New Smart Shelf is materially different from the original "Smart Shelf" product line excluded under the Purchase Agreement and does not fall under the exception carved out in the Non-Solicitation provision.

84.     The original Smart Shelf did not resemble ShelfGenie's Trade Dress or incorporate ShelfGenie's confidential information and trade secrets. The original Smart Shelf was made of inexpensive, unfinished maple wood that was joined at the corners using what is known in carpentry as a French dovetail where the edges hang over the sides.  The edges of the original Smart Shelf were flat, in contrast to the bull-nosed (rounded with a specified radius) edges of the ShelfGenie Trade Dress.  Unlike the ShelfGenie GlideOut, which has "over travel" extension side-mounted rails, which extend 25mm beyond full extension rails.  The original Smart Shelf included 3/4 extension under-mount rails.



Original Smart Shelf

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

1

2        85.    The New Smart Shelf is nearly identical to the ShelfGenie Glide-Out

3   and incorporates a confusingly similar imitation of the ShelfGenie Trade Dress.

4   Like the ShelfGenie Trade Dress, the New Smart Shelf design uses high-quality

5   Baltic Birch wood, the direction of the wood grain is front to back, and the wood is

6   joined at the corners with dovetail corner joints with no overhang.  Both the

7   ShelfGenie Trade Dress and the New Smart Shelf also incorporate clear foil

8   coating over bull-nose edges rounded at the same curvature and leave the raw edges

9   unfinished on the front and back of the panel.  Additionally, like the ShelfGenie

10  Glide-Out, the New Smart Shelf uses state-of-the-art side-mounted "over-travel"

11  rails.  The New Smart Shelf also incorporates ShelfGenie's proprietary

12  Manufacturing Specifications.



13

14

15

16

17  **ShelfGenie Glide-Out**

18

19

20

21

22  **New Smart Shelf**

23

24

25

26

27  Dovetail corner joints (no overhang)     Baltic Birch with wood grain running front to back

28  COM[...]SAPI[...] TRADE SECRETS, TRADEMARK INFRINGEMENT [...]CH OF CONTRACT

7827706V.7

1

2          **Defendants' Infringement of the ShelfGeni**

Side-mounted, "over-travel" full-extension rails

3          86.    The overall look and feel of the New Smart Shelf design is virtually

4    identical and confusingly similar to the ShelfGenie Trade Dress.

5          87.    The New Smart Shelf is not associated or connected with ShelfGenie,

6    or licensed, authorized, sponsored, endorsed, or approved by ShelfGenie in any

7    way.

8          88.    Since 2008, ShelfGenie continuously has used, and continues to use,

9    the ShelfGenie Trade Dress in U.S. commerce, long before Defendants first began

10   offering products bearing the confusingly similar New Smart Shelf design (since

11   2015).

12         89.    As a result of ShelfGenie's extensive use and promotion of its

13   ShelfGenie Trade Dress in U.S. commerce, the ShelfGenie Trade Dress acquired

14   distinctiveness and secondary meaning in the minds of relevant consumers as a

15   well-known symbol of ShelfGenie's goods before Defendants first began offering

16   products bearing the confusingly similar New Smart Shelf design.

17         90.    The goods sold by Defendants in connection with its New Smart Shelf

18   design are identical to, and compete directly with, goods sold by ShelfGenie in

19   connection with its ShelfGenie Trade Dress, and these goods are sold through

20   identical and overlapping channels of trade.

21         91.    The New Smart Shelf design is likely to deceive, confuse, and mislead

22   purchasers, prospective purchasers, and others into believing that rollout shelving

23   units sold by Defendants are authorized by, or in some manner associated with

24   ShelfGenie, which they are not.  The likelihood of confusion, mistake, and

25   deception engendered by Defendants' misappropriation of the ShelfGenie Trade

26

27

28

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

1    Dress is causing irreparable harm to the goodwill symbolized by the ShelfGenie

2    Trade Dress and the reputation for quality that it embodies.

3         92.    Defendants knowingly, willfully, intentionally, and maliciously

4    adopted and are using a confusingly similar imitation of ShelfGenie's Trade Dress.

5    To wit, Defendants knew by virtue of their relationship and contractual agreements

6    of ShelfGenie's trademark rights in the ShelfGenie Trade Dress but have

7    nonetheless created products bearing a knockoff design to compete unfairly with

8    the ShelfGenie Glide-Outs.

9    **<u>Defendants' Misuse of ShelfGenie's Confidential Information and Trade</u>**

10   **<u>Secrets.</u>**

11        93.    Defendants have used ShelfGenie's confidential information and trade

12   secrets to compete unfairly against Defendants.

13        94.    Defendants license, market, and sell products, including the New

14   Smart Shelf, that incorporate, and were created through reference to, ShelfGenie's

15   confidential information and trade secrets, including ShelfGenie's manufacturing,

16   design, construction and assembly specifications, drawings, process and

17   techniques, ordering process, methodology and terminology, pricing and volume

18   information, and marketing plans, strategies and data.

19        95.    ShelfGenie's confidential and proprietary information provides

20   Defendants critical competitive advantages in manufacturing, designing, marketing,

21   and pricing the New Smart Shelf and other products.  Because of their knowledge

22   of ShelfGenie's trade secrets and confidential information, Defendants never had to

23   engage in trial and error and avoided investing substantial sums in market research

24   and strategy.

25        96.    In breach of the express requirements of their Agreements with

26   ShelfGenie, Defendants have failed to maintain the secrecy of ShelfGenie's

27

28

24

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT<br>AND BREACH OF CONTRACT**

7827706V.7

confidential information and trade secrets.  Defendants have posted ShelfGenie's Manufacturing Specifications, including its confidential and proprietary drawings and blueprints on the walls of their factory in Orange, California.  Although the blueprints and drawings provided to Defendants included markings identifying the blueprints and drawings as Defendants' confidential and proprietary information, those markings were removed.

97.    Defendants manufacture the New Smart Shelf in the same "cell" or assembly area as the ShelfGenie Glide-Out, and using the same tools and materials, which were custom-created to manufacture the ShelfGenie Glide-Outs based on ShelfGenie's confidential and proprietary manufacturing specifications.

98.    Defendants use, for example, the same "Jig" to manufacture the New Smart Shelf and the ShelfGenie Glide-Out.  The "Jig" fastens the bottom of the box to the side of the box and allows the pin nails in the New Smart Shelf to be in the same place as in the ShelfGenie Glide-Out.  The "Jig" is customized to ShelfGenie's specific Manufacturing Specifications.

99.    Defendants have used and are continuing to use their knowledge of ShelfGenie's market to compete with Shelf Genie.  As a result of their relationship with ShelfGenie and access to ShelfGenie's proprietary ordering and marketing information, Defendants possess and have used proprietary knowledge of, *inter alia*, customer preferences, seasonal supply and demand fluctuations, and pricing information.

100.   Defendants' products, including the New Smart Shelf, incorporate ShelfGenie's Manufacturing Specifications.

101.   ShelfGenie's confidential Manufacturing Specifications were determined through extensive testing and trial and error.  The Manufacturing Specifications constitute ShelfGenie's confidential information and trade secrets.

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

102. Defendants' products, including the New Smart Shelf, include a scoop edge cut at a specific angle and finished with the specific wood finish identified in ShelfGenie's proprietary Manufacturing Specifications.

103. Defendants' products, including the New Smart Shelf, use a specific number of pin nails with a specific gauge and length, placed at a specific angle and spaced at specific distances. The pin nails are used to attach the sides of the box together. The number, gauge length, and placement of the pin nails is derived from ShelfGenie's Manufacturing Specifications and provides functional advantages to ShelfGenie.

104. Defendants' products, including the New Smart Shelf, use a specific type and amount of hot melt adhesive, administered at a specific time in the manufacturing process, to glue the glide-out box together. The type, amount, and process of administering the adhesive is derived from ShelfGenie's confidential Manufacturing Specifications and makes the glide-out box more sturdy and more efficient to construct.

105. Defendants' products, including the New Smart shelf, use a specific type of wood filler identified in ShelfGenie's confidential and proprietary Manufacturing Specifications. The wood filler is important to the sturdiness of the glide-out box.

106. Defendants' products, including the New Smart Shelf, incorporate the glide-out clearance space specified in ShelfGenie's Manufacturing Specifications. The glide-out clearance space is critical to functionality and avoids any lips or other obstacle on the existing shelf interfering with pullout.

107. Defendants' products, including the New Smart Shelf, place the "dado groove" at a specific location in the box as specified by the Manufacturing Specifications. The dado groove controls where the rail will be mounted on the

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

1    box.  The location of the rail is critical to the functionality of the ShelfGenie Glide-

2    Out.

3          108.   Defendants' products, including the New Smart Shelf, use the specific

4    type and length of screw specified in ShelfGenie's Manufacturing Specifications.

5    The type and length of screw ensures that the screw does not pierce the box or

6    interfere with the rail.

7          109.   Defendants' products, including the New Smart Shelf, use the same

8    quality control methods, including definition of "defect" and the maximum

9    allowable defects, identified in the Manufacturing Specifications.

10          110.   Defendants utilize ShelfGenie's confidential and proprietary packing

11    and shipping methods.  ShelfGenie's packing and shipping method allows

12    ShelfGenie to transport ShelfGenie Glide-Outs without damage.

13          111.   For all the reasons alleged herein, Defendants have failed to maintain

14    the secrecy of ShelfGenie's confidential information and trade secrets, and have

15    used ShelfGenie's confidential information and trade secrets, including the

16    Manufacturing Specifications, to compete unfairly against Defendants.

17    <u>**COUNT I**</u>

18    <u>**MISAPPROPRIATION OF TRADE SECRETS**</u>

19    <u>**GEORGIA TRADE SECRETS ACT, O.C.G.A. § 10-1-761, *ET SEQ***</u>

20    **(ALL DEFENDANTS)**

21          112.   ShelfGenie incorporates paragraphs 1 through 111 of the Complaint.

22          113.   The Georgia Trade Secrets Act, O.C.G.A. § 10-1-760, *et seq.*,

23    prohibits "[d]isclosure or use of a trade secret of another without express or implied

24    consent by a person who . . . [u]sed improper means to acquire knowledge of a

25    trade secret; [or] [a]t the time of disclosure or use, knew or had reason to know that

26    knowledge of the trade secret was

27

28

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

(I) Derived from or through a person who had utilized improper means to acquire it;

(II) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use . . . .

O.C.G.A. § 10-1-760(2).

114.   "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means." *Id.* § 10-1-760(1).

115.   Defendants misappropriated ShelfGenie's protected trade secrets and confidential information by improperly using trade secrets and confidential information received through their confidential manufacturing relationship with ShelfGenie to compete against ShelfGenie by, among other things, creating, manufacturing, and distributing the New Smart Shelf.

116.   Pursuant to the Agreements, Defendants had access to ShelfGenie's trade secrets, including without limitation ShelfGenie's manufacturing, design, construction and assembly specifications, drawings, process and techniques, ordering process, methodology and terminology, pricing and volume information, and marketing plans, strategies and data. *See supra* ¶¶ 51-61.

117.   Defendants had access to the trade secrets only pursuant to the confidentiality protections in the Agreements and under circumstances giving rise to a duty to maintain the confidentiality of the trade secrets and not to use them except for the benefit of ShelfGenie.  Defendants have knowledge of this

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

confidential information, which constituted trade secrets of ShelfGenie, as a result of their confidential manufacturing relationship with Defendants. *Id.* ¶¶ 27-50.

118.   Defendants, in doing the acts complained of herein, including but not limited to the development of the New Smart Shelf, have disclosed and used ShelfGenie's trade secrets, including but not limited to ShelfGenie's manufacturing, design, construction and assembly specifications, drawings, process and techniques, ordering process, methodology and terminology, pricing and volume information, and marketing plans, strategies and data, without a privilege to do so pursuant to O.C.G.A. § 10-1-762. *Id.* ¶¶ 93-111

119.   Defendants' use of ShelfGenie's trade secrets has caused, and will continue to cause, ShelfGenie substantial and irreparable injury, including but not limited to loss of profits and damage to ShelfGenie's brand, reputation, and goodwill.

120.   Pursuant to Georgia Trade Secrets Act, O.C.G.A. § 10-1-762, ShelfGenie is entitled to injunctive relief to prevent Defendants from retaining and using ShelfGenie's trade secrets.

121.   ShelfGenie is also entitled to compensatory damages against Defendants in an amount to be proved at trial, as well as exemplary damages based on Defendants' willful and malicious misappropriation, pursuant to O.C.G.A. § 10-1-763.

## <u>COUNT II</u>

## <u>FEDERAL UNFAIR COMPETITION</u>

### (ALL DEFENDANTS)

122.   ShelfGenie incorporates paragraphs 1 through 121 of the Complaint.

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

123.   The design of Defendants' product, the New Smart Shelf, is virtually identical and confusingly similar to ShelfGenie's well-known ShelfGenie Trade Dress.

124.   Defendants' use of a confusingly similar imitation of the ShelfGenie Trade Dress has already caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that the New Smart Shelf is distributed by ShelfGenie or is associated or connected with ShelfGenie, or has the sponsorship, endorsement or approval of ShelfGenie. *See supra* §§ 20-26, 86-92.

125.   Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the pubic and, additionally, irreparable injury to ShelfGenie's goodwill and reputation, for which ShelfGenie has no remedy at law. *Id.*

126.   Defendants' conduct is willful, intended to reap the benefit of ShelfGenie's goodwill, and violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

127.   Particularly in light of Defendants' manufacturing relationship with ShelfGenie and intimate knowledge of Defendants' products, Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the ShelfGenie Trade Dress to ShelfGenie's great and irreparable injury.

128.   Defendants' actions have caused and are likely to continue causing substantial injury to the public and to ShelfGenie, and ShelfGenie is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. § 1116 and § 1117.

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

# COUNT III

## BREACH OF CONTRACT, CONFIDENTIALITY PROVISIONS

### (ALL DEFENDANTS)

129.   ShelfGenie incorporates paragraphs 1 through 128 of the Complaint.

130.   ShelfGenie and Defendants entered into the Confidentiality Agreement, the Purchase Agreement, and the Amendment, through which Defendants agreed to undertake certain obligations with respect to ShelfGenie's confidential information. *See supra* ¶¶ 27-50.

131.   Pursuant to those Agreements, ShelfGenie disclosed confidential information to Defendants, including but not limited to ShelfGenie's manufacturing, design, construction and assembly specifications, drawings, process and techniques, ordering process, methodology and terminology, pricing and volume information, and marketing plans, strategies and data. *Id.* ¶¶ 51-61.

132.   The Agreements required Defendants to take specific measures to maintain the confidentiality of ShelfGenie's confidential information and prohibits Defendants from using the ShelfGenie's confidential information "other than in relation to evaluation, distributing, purchasing and selling products manufactured or distributed by [Defendants]."  Confidentiality Agreement § 1.

133.   Defendants breached the Agreements by failing to take adequate steps to protect ShelfGenie's confidential information and trade secrets and by using ShelfGenie's confidential information and trade secrets for the benefit of Defendants and to compete against ShelfGenie, including but not limited Defendants' manufacture and sale of the New Smart Shelf. *See supra* ¶¶ 93-111.

134.   ShelfGenie has sustained damages caused by Defendants' breach of the Agreements in an amount to be proven at trial and is entitled to an equitable accounting, as well as injunctive relief.

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

# COUNT IV

## BREACH OF CONTRACTS, NON-SOLICITATION PROVISION

### (ALL DEFENDANTS)

135.   ShelfGenie incorporates paragraphs 1 through 134 of the Complaint.

136.   The Agreements prohibit Defendants from directly soliciting ShelfGenie's "Competitors, customers, or prospective customers to purchase the Products from DBS."  Purchase Agreement § 2.1.

137.   The Purchase Agreement provides that Defendants' "Accessory line and Smart Shelf are specifically excluded from The Products."  *Id.* § 1.4.

138.   The New Smart Shelf is materially different from the "Smart Shelf" and constitutes a "Product" under the terms of the Purchase Agreement.  *Supra* ¶¶ 74-85.

139.   Defendants have breached the Non-Solicitation Provision of the Purchase Agreement by designing, manufacturing, and assembling "Products," including the New Smart Shelf, and by soliciting ShelfGenie's competitors, customers, and prospective customers to purchase "Products," including the New Smart Shelf, from Defendants.

140.   In the alternative, the Non-Solicitation Agreement of the Purchase Agreement requires Defendants to provide ShelfGenie notice of any independent design or manufacture of any Product.

141.   Defendants have breached the Non-Solicitation Provision of the Purchase Agreement by failing to provide ShelfGenie notice of their manufacture and design of the New Smart Shelf.

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

1    142.   ShelfGenie has sustained damages caused by Defendants' breach of

2    the Agreements in an amount to be proven at trial and is entitled to injunctive

3    relief.

4                                          **<u>COUNT V</u>**

5                            **<u>UNFAIR BUSINESS ACT</u>**

6    **<u>CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE</u>**

7                                          **<u>§ 17200</u>**

8                                    **(ALL DEFENDANTS)**

9    143.   ShelfGenie incorporates paragraphs 1 through 142 of the Complaint.

10   144.   The California Unfair Competition Law, Cal. Bus. & Prof. Code §

11   17200 et seq., defines unfair competition to include any "unlawful," "unfair," or

12   "fraudulent" business act or practice. Cal. Bus. & Prof. Code § 17200.

13   145.   Defendants' conduct, as alleged above, constitutes unlawful, unfair

14   and/or deceptive acts and practices within the meaning of Cal. Bus. & Prof. Code §

15   17200.

16   146.   Defendants have used, and are currently using, ShelfGenie's trade

17   secrets and confidential business information for the purpose of gaining an unfair

18   competitive advantage over ShelfGenie by, among other things, relying on

19   ShelfGenie's confidential and trade secret information to design, manufacture, and

20   develop Defendants' products, including the New Smart Shelf, and to improve

21   Defendants' position within the marketplace. *See supra* §§ 20-26, 86-92.

22   147.   Defendants' use of a confusingly similar imitation of the ShelfGenie

23   Trade Dress has already caused and is likely to cause confusion, deception, and

24   mistake by creating the false and misleading impression that the New Smart Shelf

25   is distributed by ShelfGenie or is associated or connected with ShelfGenie, or has

26   the sponsorship, endorsement or approval of ShelfGenie.  *Id.*

27

28

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT
AND BREACH OF CONTRACT**

7827706V.7

148.    Defendants' copying of the ShelfGenie Glide-Out has the effect of deceiving customers and potential customers as to the origin of the New Smart Shelf.

149.    As a result of copying ShelfGenie's goods and services, Defendants have gained unearned commercial benefit, including but not limited to sales of the New Smart Shelf.

150.    As a result of Defendants' unlawful conduct, ShelfGenie has suffered a loss in sales, as well as irreparable injury to its reputation and goodwill.

151.    Pursuant to California Business and Professions Code § 17203, ShelfGenie is entitled to restitution and injunctive relief for Defendants' unlawful conduct.

## COUNT VI
## DECLARATORY JUDGMENT
## FEDERAL DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201
### (ALL DEFENDANTS)

152.    ShelfGenie incorporates paragraphs 1 through 151 of the Complaint.

153.    The Amendment provides that "[a]ny improvement, modification, alteration, amendment, update, or other changes to or derivative works or other intellectual property arising out of or made through reference to [ShelfGenie's] Confidential Information . . . and the goodwill associated therewith will be and become the sole and absolute property of [ShelfGenie]." Amendment § 5.

154.    The parties have a real and justiciable controversy and dispute about whether Defendants' products, including the New Smart Shelf, were made out of, or through reference to, ShelfGenie's confidential and proprietary information

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

1   and/or constitute modifications, amendments, or "derivative works" to the

2   ShelfGenie Glide-Outs.

3       155.   Declaratory relief will effectively adjudicate the rights and obligations

4   of the parties.

5       156.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201,

6   ShelfGenie requests a declaration from this Court that Defendants' products,

7   including the New Smart Shelf, and the goodwill associated therewith, are the sole

8   and absolute property of ShelfGenie.

9   **COUNT VII**

10   **LITIGATION EXPENSES**

11   **(ALL DEFENDANTS)**

12       157.   ShelfGenie incorporates paragraphs 1 through 156 of the Complaint.

13       158.   Defendants have been stubbornly litigious and have acted in bad faith

14   in a manner that has caused unnecessary harm and expense to ShelfGenie, entitling

15   ShelfGenie to recover its reasonable litigation expenses incurred in this action

16   pursuant to O.C.G.A. § 13-6-11.

17       **WHEREFORE**, ShelfGenie requests the following relief:

18       A.   That the Court enter judgment in favor of ShelfGenie and against

19           Defendants;

20       B.   That the Court permanently enjoin Defendants' unauthorized use of

21           ShelfGenie's trade secrets and confidential information, including the

22           Manufacturing Specifications;

23       C.   That the Court award ShelfGenie compensatory damages for the actual

24           and threatened misappropriation of ShelfGenie's trade secrets and

25           confidential information, including without limitation disgorgement of

26           any profits earned by Defendants due to their unlawful conduct and all

27

28

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

1    monetary remedies available under the Georgia Trade Secrets Act,

2    O.C.G.A. § 10-1-761 *et seq.*, including without limitation an award of

3    unjust enrichment and/or reasonable royalties, and an exemplary

4    damages award for Defendants' willful and malicious

5    misappropriation under O.C.G.A. § 10-1-763, plus interest through the

6    date of judgment, attorneys' fees and litigation costs and expenses;

7    D.    That Defendants and all of their agents, officers, employees,

8    representatives, successors, assigns, attorneys, and all other persons

9    acting for, with, by through or under authority from Defendants, or in

10    concert or participation with Defendants, and each of them, be

11    enjoined from:

12    1.    using the ShelfGenie Trade Dress or any other copy,

13    reproduction, colorable imitation, or simulation of the

14    ShelfGenie Trade Dress on or in connection with

15    Defendants' goods;

16    2.    using any trademark, name, logo, design, or source

17    designation of any kind on or in connection with Defendants'

18    goods that is likely to cause confusion, mistake, deception,

19    or public misunderstanding that such goods or services are

20    produced or provided by ShelfGenie, or are sponsored or

21    authorized by ShelfGenie, or are in any way connected or

22    related to ShelfGenie;

23    3.    passing off, palming off, or assisting in passing off or

24    palming off Defendants' goods as those of ShelfGenie, or

25    otherwise continuing any and all acts of unfair competition

26    as alleged in this Complaint; and

27

28

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

1            4.      advertising, promoting, offering for sale, or selling the

2                    infringing New Smart Shelf or other similar goods.

3    E.      That the Court award ShelfGenie compensatory and punitive damages,

4            an accounting for all profits received by Defendants' unauthorized use

5            of the ShelfGenie Trade Dress, or confusingly similar imitations

6            thereof, the costs of this action, reasonable attorneys' fees under 15

7            U.S.C. § 1117, and a trebling of damages and profits as authorized by

8            law;

9    F.      That the Court permanently enjoin Defendants' licensing, sale and

10           marketing of any products, including the New Smart Shelf, that were

11           developed with ShelfGenie's trade secrets and confidential

12           information;

13   G.      That the Court order Defendants to submit to an equitable accounting

14           of all profits or benefits arising from their breach of the Agreements;

15   H.      That the Court award compensatory damages for Defendants' breach

16           of the Agreements;

17   I.      That the Court award compensatory damages for Defendants' unfair

18           and deceptive business practices;

19   J.      That the Court declare that any derivative works made through or with

20           reference to ShelfGenie's confidential information, including the New

21           Smart Shelf, are the "sole and absolute" property of ShelfGenie.

22   K.      That the Court award ShelfGenie its reasonable litigation expenses

23           pursuant to O.C.G.A. § 13-6-11.

24   L.      That a jury trial be had on all issues so triable.

25   M.      Award such other and further relief as this Court shall deem just and

26           proper.

27
                                                37
28   **COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT**
     **AND BREACH OF CONTRACT**

7827706V.7

DATED:     November 24, 2015

KILPATRICK TOWNSEND & STOCKTON LLP

/s/ Heather Habes
Heather Habes
Counsel for Plaintiffs

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs hereby demand a trial by jury in this action.

3

DATED:      November 24, 2015

4

               KILPATRICK TOWNSEND & STOCKTON LLP

5

6

                           /s/ Heather Habes

                           Heather Habes

7

                           Counsel for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT**

7827706V.7